■ Babcock and Wilcox Company, Appellant-Respondent, v Allied-General Nuclear Services et al., Respondents-Appellants.—Order of the Supreme Court, New York County (William J. Davis, J.), entered March 23, 1989, which granted defendants partial summary judgment insofar as plaintiff's breach of contract action relates to events prior to 1980, unanimously modified, on the law, to the extent of granting defendants summary judgment dismissing the complaint and, except as so modified, affirmed, without costs. Appeal and cross appeal from the order of the same court, entered on or about August 14, 1989, which denied plaintiff's motion to reargue, dismissed as nonappealable, without costs.

The parties entered into an agreement executed in May 1972 obligating defendants to reprocess spent nuclear fuel for

plaintiff, which included the building of a nuclear fuel reprocessing facility at Barnwell, South Carolina. This facility was to receive spent fuel from Arkansas Power and Light which purchased its nuclear fuel from plaintiff. The Barnwell facility was completed in 1976 but never received an operating license. Although the Nuclear Regulatory Commission (NRC) had announced a policy of licensing reprocessing facilities on an interim basis pending completion of an environmental impact review (referred to by the acronym GESMO), interim licensing was precluded by the decision of the Second Circuit Court of Appeals in *Natural Resources Defense Council v United States Nuclear Regulatory Commn.* (539 F2d 824 [1976], *vacated sub nom. Allied-General Nuclear Servs. v Natural Resources Defense Council,* 434 US 1030 [1978] [vacated and remanded to consider question of mootness]). To compound matters, the indefinite deferral of commercial reprocessing licensing was announced by President Carter on April 7, 1977. In December 1977, NRC terminated all license applications for spent nuclear fuel reprocessing facilities, which action was upheld by the Third Circuit in 1979 *(Westinghouse Elec. Corp. v United States Nuclear Regulatory Commn.,* 598 F2d 759), a suit to which defendants were parties. While President Reagan announced the lifting of the indefinite ban on commercial reprocessing efforts in October 1981, the NRC never undertook completion of the environmental review prerequisite to the licensing of any facility. Therefore, no further action was taken on the license application for defendants' Barnwell plant, and it was permanently closed on December 31, 1983.

This dispute concerns the application of the *force majeure* clause contained in the agreement which provides, in pertinent part: "Failure of B&W or Allied-Gulf to make or take any delivery hereunder (or portions thereof) when due if occasioned by * * * failure of B&W and/or Utility or Allied-Gulf to obtain or maintain a required permit, license, authorization, or permission despite B&W's and/or Utility's or Allied-Gulf's, as the case may be, due diligence to obtain same * * * shall not subject said party to any liability to the other. * * * In the event of any such contingency, the party affected shall use its best efforts to remedy the cause in the shortest practicable time". Supreme Court, from whose orders both parties appeal, determined that factual issues exist with respect to the adequacy of defendants' efforts to overcome their lack of an operating license. Specifically, their failure to submit a second license application following President Reagan's an-

nouncement and the probability that any such application would have been denied were held to be questions requiring resolution at trial.

We disagree. In the absence of the completion of an environmental impact study, no license to operate the reprocessing facility could be granted *(Natural Resources Defense Council v United States Nuclear Regulatory Commn., supra)*. Moreover, defendants' efforts to overturn the 1977 NRC ruling, which terminated all pending license applications and further environmental impact assessment (GESMO), demonstrate a good-faith effort to overcome the impediment to performance as required by the agreement. Finally, we cannot accept plaintiff's contention that defendants could have engaged in alternate performance under the contract by storing and disposing of the spent nuclear fuel. Under any fair reading, the agreement is one for the reprocessing of spent fuel to which the transportation, storage and disposal of nuclear waste products (after reprocessing and recovery of usable fuel) are merely incidental.

We note that these issues have been considered in the context of related litigation by the United States District Court for the Northern District of Illinois which reached similar conclusions *(Commonwealth Edison Co. v Allied-General Nuclear Servs.,* 731 F Supp 850 [Posner, J.]).

Plaintiff's other contentions have been examined and found to be without merit. Concur—Milonas, J. P., Ellerin, Wallach and Rubin, JJ.